## Arnold et al. v. The Edlis Barber Supply Company.

*Judgment — Confession on lease—Amicable ejectment—Opening—Landlord and tenant — Sale of property — Default—Breach of covenants before sale—Rights of purchaser of leased premises.*

1. A purchaser of a property subject to a lease cannot declare a forfeiture for breaches occurring before he became owner.

2. Where a tenant, without notice of the sale of the premises he occupied under a lease, mailed a check for the month's rent to the former owner, as he had been accustomed to do, and before the check had been returned and the tenant had been afforded an opportunity to act, the purchaser had confessed judgment on the lease which contained a clause for amicable ejectment, a rule to open judgment was made absolute.

Rule to open judgment. C. P. Allegheny Co., Jan. T., 1925, No. 1732.

Before Macfarlane and Drew, JJ.

*A. M. Neeper,* for plaintiff.

*J. M. Stoner & Sons* and *Maurice Chaitkin,* for defendant.

MACFARLANE, J.—This is a rule to show cause why judgment should not be opened in an amicable ejectment. Lease was made July 18, 1918, by H. H. Arnold and J. S. Arnold, owners of the property, to the Edlis Barber Supply Company, a corporation, for the term of ten years and six months, from Nov. 1, 1918. The parts of the lease necessary to understand the case are:

The tenant to pay $400 on the first of each month, in advance, at the office of the lessor or his agent, and if the tenant shall default in the payment of

any instalment of rent as the same becomes due and payable, the entire rent shall, at the option of the lessor, become due and payable.

Forthwith, on every default of payment of rent or any and every breach of covenant, judgment may be entered by confession by any attorney in ejectment against the tenant.

The tenant not to alter the premises without the written consent of the lessor.

To use the premises for only wholesale and retail barbers', hatters' and bootblack supplies, and to surrender the same in as good order as they now are, reasonable wear and tear and accidents by fire alone excepted.

To keep and maintain the premises during the term in good repair, including water-pipes, their connections and all plumbing fixtures.

On Sept. 22, 1924, the Arnolds executed and acknowledged a deed for the property to Jacob H. Goehring and Fern B. Goehring, his wife. It was recorded Oct. 16, 1924. The lease was assigned by the Arnolds to the Goehrings Oct. 14th. In the testimony taken on the rule, Edlis, the president of the defendant company, states that C. C. Lee, Esq., attorney for Goehring, informed him (Edlis) that Goehring had bought the property and that the deed had just been recorded. This must have been the 16th. He states that he had no notice of the assignment of the lease or about the payment of the rent. On Nov. 4th the defendant was notified by the attorney for the Arnolds that they had sold the property to Jacob Goehring and that thereafter rents were payable to him.

The testimony is undisputed, and it is shown by letters and a check that the defendant company sent by mail a check dated Nov. 1, 1924, to the Arnolds for $400 in payment of the November rent. The testimony on the part of the defendant was that it had been the custom to make the payment of the rent due to the Arnolds in this way, as they were both residents of Atlantic City. On Nov. 4th the defendant wrote to the attorney that a check had been sent for the November rent to the Arnolds on Nov. 1st, and requesting the attorney to request them to return the check to the defendant or to make it payable to Jacob Goehring and mail it to him. The Arnolds endorsed the check, "Pay to      Goehring. H. H. & J. S. Arnold," and it was mailed to Goehring, but by mistake was sent to a wrong address and was returned and then forwarded to Goehring, reaching him Nov. 10th. Goehring returned the check to the defendant with a written refusal to receive it, and charging that there were defaults under the terms of the lease. The defendant's testimony is that a tender was made of the November rent on the 18th of that month and that it was refused.

The grounds for the default were that the November rent had not been paid; that prior to Dec. 17, 1923, and on that day, the defendant had on the premises a volatile explosive and inflammable materials without a permit from the Municipal Explosive Board of the City of Pittsburgh and against the ordinances of the city, and that these substances ignited from an open gas fire, setting the premises on fire, damaging the third and fourth floors; that the roof was to a great extent destroyed, windows burned and that the fire was accompanied by explosions; that the premises were not restored by defendant to their former condition; that the construction of the building was weakened; that the fire was caused through negligence of the defendant and in violation of the ordinances of the City of Pittsburgh and the terms of the lease; that the defendant, prior to November, 1924, had upon the premises hardware and tools and other goods other than barbers', hatters' and bootblack supplies and sold them; that defendant had cut a door through the

wall dividing the leased premises and the adjoining premises, which were leased to the defendant by the owner.

It was also stated in the declaration that Goehring had notified the defendant that he had purchased the property and was the owner of the lease, but that the defendant had violated its provisions, and that the defendant knew the location of Goehring's office in Pittsburgh at the time the check was sent to Atlantic City, and that defendant did not pay or offer to pay the rent for November at the office of the plaintiff, as provided by the terms of the lease. That the check sent to the Arnolds at Atlantic City reached Goehring on Nov. 10th and had been returned by him to the president of the defendant.

Counsel for the plaintiff has requested us to make certain findings of fact, but we think we have recited sufficiently the preliminary facts.

Testimony on the defendant's part was to the effect that all of the alleged defaults prior to the purchase by Goehring had been waived by Arnolds with full knowledge of the facts. Aside from this, it is familiar law, needing no citation of authorities, that the purchaser of a property subject to a lease cannot declare a forfeiture for breaches occurring before he became the owner. It seems to us that the plaintiff has used these alleged derelictions on the part of the tenant so as to show that his forfeiture on account of the non-payment of the rent was not inequitable. The defendant introduced evidence to the effect that before its president was told that the conveyance had been made, he had heard that Goehring had been offering to lease the property to other tenants. This was denied by Goehring. Nevertheless, there is evidence that Goehring complained of an alleged breach in the use of a sign, but after he was shown the lease, conceded that there was no provision in the lease regulating that matter. It was stated on the argument that Goehring did not wish to recognize the lease, and it is an undoubted fact that the rent fixed is less than could be demanded by Goehring from a new tenant. It was also stated that Goehring had offered to negotiate with the defendant for a new lease on different terms and at an increased rent.

There was testimony that the defendant's president was told by Mr. Goehring and his attorney that the rent was thereafter to be paid to him, and testimony of Mr. Goehring's brother, an attorney, that he had told defendant's president, Edlis, that Jacob Goehring had his office with him, and it is conceded that Edlis knew the location of the office of Goehring, the attorney.

The fact remains that Goehring did not explicitly notify Edlis that the rent was to be paid to him at his office and did not give him its location. It further appears from the testimony that when Edlis went to Attorney Goehring's office on Dec. 1st, stating that he wished to make tender of the November and December rent, Mr. Goehring told him he had not seen his brother (Jacob) for about a week, and that his brother attended to his business at his house and then came to the office. It did not appear that Jacob's name was on the directory of the building or on the door, or its location in the city directory or the telephone book. The position of the plaintiff seems to be that it was incumbent upon the defendant, upon a statement the ownership had changed, to examine the record, to communicate with the Arnolds and to hunt up the plaintiff's office.

We are clearly of opinion that the evidence before us requires the submission to a jury of the question whether the plaintiff was in position to forfeit for non-payment of the rent.

Goehring knew that the Arnolds did not live in Pittsburgh, and there is testimony sufficient for a finding by a jury that he knew that the rent had not been paid at their office in this city, for it is most likely they had no such

office, and it appears that the negotiations for the property were conducted between Goehring and an attorney who came from Atlantic City.

We have not attempted to lay down the law which should govern the trial judge, and have confined ourselves to a general statement of the principles actuating us in making our order.

On the general subject of forfeitures, the case of Lynch *v.* Versailles Co., 165 Pa. 518, is in point.

Another question arises in the case. At the time the rule was granted to show cause why the judgment should not be opened, the execution was stayed and the sheriff was directed to reinstate the tenant. At that time, as it appeared by the petition and later by the testimony, the sheriff had put all of the employees of the defendant out of the building and had placed Goehring therein. He had not removed any of the goods.

In an action of ejectment the *hab. fa.* is a command to the sheriff to put the plaintiff in possession. Whether he has fully executed his writ depends upon the circumstances of the case. Where the question is merely one of title, the placing of the plaintiff on the property is sometimes sufficient, and, under some circumstances, even that is not necessary. Here a four-story building had in it goods and appliances of the defendant. Whether the writ was completely executed or not we need not decide. We think it is a serious question, in view of the fact that it is in reality a landlord and tenant case, in which, of course, an action of ejectment is a proper proceeding. Aside from this, an order restoring a defendant to possession after an adjudication that the judgment in ejectment was erroneous, is old and well established practice. It was held in Buchanan *v.* Banks, 203 Pa. 599, that where a judgment in ejectment was opened the defendant was entitled to be restored to possession to await the determination of the cause. See, also, Hoffman *v.* Hafner, 211 Pa. 10.

From William J. Aiken, Pittsburgh, Pa.